BANK   *v.*   MCADAMS.

(*Nashville.*    February 2, 1901.)

CHANCERY PLEADING AND PRACTICE.   *Burden of proof.*

Under a creditor's bill, seeking to reach his debtor's assets in the
hands of a third person, and averring that such third person
had received them subject to complainant's lien, or fraudu-
lently, the burden is upon complainant. where the facts are
put in issue by the answer, to prove the averments of his bill.
Such third party is not in the situation of a garnishee or inter-
venor.

FROM   MARSHALL.

Appeal from Chancery Court of Marshall County.
WALTER  S.  BEARDEN,  Ch.

GEO.   T.   HUGHES  and  W.   W.   WALKER   for
Bank.

MARSHALL  &  ARMSTRONG  for  McAdams.

BEARD, J.   The complainant is a judgment
creditor of the defendant, McAdams, with a re-
turn of *nulla bona* upon the execution issued
from this judgment.   The original bill was filed
to reach certain promissory notes, alleged to be
the property of the judgment debtor.   He and the

makers of these notes were made defendants to the bill. All the defendants answered. McAdams in his answer stated he was at one time the owner of the several notes described, but alleged that before the filing of the bill he had sold and transferred them to one Davis. In their answer his co-defendants admitted their liability in whole or in part as claimed by the complainant, but averred, on information, that Davis was claiming ownership by a transfer prior in time to the institution of this suit.

Thereupon complainant filed an amended bill in which it is alleged that "one Davis . . . is making claim to the said notes . . . which belong to said . . . McAdams, and were held by him at the time of the filing of the original bill." Complainant then averred "that if the said notes were transferred to the said . . . Davis by the said . . . McAdams, it was soon after the filing of complainant's bill; that the transfer was a device of the parties for the purpose of hindering, delaying, and defrauding complainant in the collection of its judgment."

McAdams and Davis answered this amended bill, and denied that the transfer was made after the filing of the original bill. They also denied that the transfer was a fraudulent device as charged by complainant, but on the contrary alleged that it was made in good faith and for value.

The Chancellor dismissed the bills of complain-

ant, save in one particular not now in question, and the Court of Chancery Appeals has affirmed that decree.

The present appeal involves a question of chancery practice, arising upon the issue made by the bill as amended and the answer thereto. The Court of Chancery Appeals held that upon this issue the burden rested upon complainant to maintain the averments of its bill that go to impeach the title of Davis to the notes in controversy, and that the necessary result of its failure to carry this burden was a decree of dismissal, as already stated. It is now insisted that there was error in this holding.

It is conceded by complainant that the general rule is that where one comes into chancery he must make good by evidence the averments of his bill on which he seeks recovery, and that where he calls in question a transaction for fraud he cannot content himself with the suggestion that the defendant has failed to show *bona fides,* but he is bound to furnish satisfactory evidence of the fraud alleged. But it is contended it is otherwise in a case like the present; that complainant, having brought Davis in by process in the nature of garnishment proceeding, an issue is made between complainant, a garnisheeing creditor, and Davis, the claimant of the property sought to be reached, and as such claimant on this issue, the burden is on him to make good his title.

In other words, to use the words of the brief of counsel for complainant, "Davis must recover on the strength of his title."

The argument of the counsel is that the attitude of Davis in the case is that of an intervenor or an interpleader, who comes to assert a prior and superior right to property levied upon by writs of attachment or execution, issued against another, in which case he is bound to establish his claim by affirmative testimony, and that such is the rule though he be brought in involuntarily by one who seeks to impeach his title.

This argument rests for authority on Sections 674, 675, 676 of Vol. 2 of Shinn on Attachment and · Garnishment, and the cases cited in support of the text. But an examination of these sections makes it clear that the author is dealing with the statutory practice of intervention or interpleading of a claimant of property seized by attachment or execution, and not with a rule of equity practice. The cases relied upon in support of the text, where pertinent at all, arise under statutory or Code provisions. Each of these cases involves a question of practice under such provisions. All announce that when a claimant comes in by interplea or intervention, setting up title to such property, the sole issue between him and the execution or attachment creditor is the superiority of the former's claim; that the burden of proof is on him, and he must recover on the

strength of his title. No one lays down a rule of general equity practice and they furnish no authority for the contention in the present case.

This amended bill is the ordinary bill of a creditor who seeks to subject property of his debtor, which it is averred the latter and a third party are covinously undertaking to withdraw from the satisfaction of a just claim. It alleges, in substance, that the property was not transferred when the original bill was filed, or, if so, it was done fraudulently, and that in either contingency the complainant has the right to reach and appropriate it. Both these averments are denied by the answer. These denials, under the rule of chancery practice already mentioned, put the complainant to the proof. The defendants could await evidence on the issues thus made; the complainant could not. The burden was on the latter, though it involved the necessity of furnishing proof of the negative contained in the first of its alternative allegations. 1 King's Dig., p. 410. Having failed to do this, his suit necessarily failed.

As to the facts developed in evidence, we are concluded by the finding of the Court of Chancery Appeals. This is equally true as to the inferences of fact made by that Court from the facts found. We might agree with the complainant's counsel as to the evidential effect of the possession and claim of ownership of the notes

in controversy by McAdams just prior to the filing of the original bill, and his conceded fraudulent purpose in disposing of these notes, coupled with the fact that the alleged fraudulent transferee has failed to testify. But this would be to no useful end. The finding of the Court that these is "no evidence in the record to connect Davis with McAdams' fraud," is conclusive of the case.

The decree of that Court is therefore affirmed.